## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HILTON KARRIEM MINCY,** | : | **CIVIL ACTION NO. 1:07-CV-0790** |
| | : | |
| **Plaintiff,** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **EDWARD KLEM, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Hilton Karriem Mincy ("Mincy" or "plaintiff"), a state inmate, who, at all relevant times, was incarcerated at the State Correctional Institution at Mahanoy, Frackville, Pennsylvania ("SCI-Mahanoy"), initiated this civil rights action pursuant to 42 U.S.C. § 1983 on April 30, 2007, alleging that his constitutional rights were violated. (Doc. 1.) The matter is proceeding *via* a second amended complaint, which was filed on May 24, 2010, and alleges First Amendment retaliation claims. (Doc. 44.) Presently pending is plaintiff's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 (Doc. 80) on Counts II, III and V of the second amended complaint. Also pending is defendants' motion for summary judgment on all claims. (Doc. 150.) For the reasons set forth below, plaintiff's motion will be denied and defendants' motion will be granted. Plaintiff has also recently filed a motion for sanctions (Doc. 196), motion to amend the complaint (Doc. 198), and motion to stay the ruling on defendants' motion for summary judgment (Doc. 200). These motions will be denied.

I.   **Procedural Background**

The procedural history underlying this matter is Byzantine and somewhat problematic.  Therefore, the court will set forth the same in detail to place the instant motions in their proper context.

On February 22, 2007, plaintiff filed numerous claims, in a single complaint, naming seventy-seven defendants from the State Correctional Institution at Albion ("SCI-Albion") and SCI -Mahoney, including Klem, Chmielewski, Temperine, Gavin, Williams, Kornasky, Derfler, Wetzel, Kmieciak, Kerschner, Brought, Bronsburg, Meyers, Hryciyna, Vance, Murphy, and Gower.  This complaint was docketed under Civil Action Number 1:07-CV-340.  See Mincy v. Klem (Mincy I), Civ. A. No. 1:07-CV-340 (M.D. Pa. Feb. 22, 2007).  The court conducted a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A and thereafter ordered plaintiff to file an amended complaint that comported with Federal Rules of Civil Procedure 8 and 20.  (See Mincy I, Doc. 4.)  Rather than file an amended complaint, however, plaintiff commenced a new action by filing a new complaint, which was assigned the above-captioned docket number.  (See Doc. 4.)  The court ordered the new complaint withdrawn and directed it to be filed as an amended complaint under the docket number associated with Mincy I, closing the above-captioned civil action number.  (See id.)  This apparently caused plaintiff some bemusement, as he immediately filed a notice of appeal in the above-captioned matter, (see Doc. 5), and a motion for reconsideration in Mincy I.  (See Mincy I, Doc. 12.)  After his amended complaint was docketed in Mincy I, but before any further action was taken by the

2

court, plaintiff also filed a notice of appeal in Mincy I.  (See Mincy I, Docs. 14-15.)

The court thereafter dismissed plaintiff's complaint in Mincy I for its failure to

adhere to the federal pleading requirements of Rule 8.  (See Mincy I, Doc. 17.)  The

Third Circuit Court of Appeals recognized that the appeals in Mincy I and the

above-captioned litigation concerned identical subject matter and consolidated

both appeals under the appellate docket associated with the above-captioned

matter.  (See Doc. 7 (reproducing Third Circuit order in Mincy v. Klem (Mincy II),

No. 07-2689 (3d Cir. June 21, 2007))).  In a *per curiam* opinion dated December 16,

2008, the Third Circuit vacated this court's dismissal order in Mincy I and

remanded the case for further consideration, also under the above-captioned

docket number.  (Doc. 9.)

The Third Circuit Court of Appeals found that "[t]he District Court correctly

ordered Mincy to file an amended complaint using a form- complaint, because his

original one was unduly long.  However, in light of the liberal construction given to

pro se pleadings, we cannot conclude that Mincy's amended form-complaint does

not satisfy Rule 8.  His averments under the "Statement of Claim" section of the

form-complaint plainly allege that the Defendants have retaliated against him for

filing lawsuits, grievances and  complaints against prison officials, as a means of

deterring him from exercising his First Amendment  rights."  See Mincy II, 303 F.

App'x 106 (3d Cir. 2008).  Therefore, in accordance with the Mandate containing the

Third Circuit's Judgment and Opinion (Doc. 9), Mincy's form complaint (Doc. 1)

was ordered served on defendants Klem, Beard and Brooks, the only defendants specifically named in the form complaint.[1]  (Doc. 10.)

On February 26, 2009, Mincy filed a motion to separate the parties.  (Doc. 11.) On March 24, 2009, defendants moved to dismiss plaintiff's complaint.  (Doc. 16.) After review of plaintiff's brief in opposition to defendants' motion to dismiss, wherein he sought to amend his complaint to clarify the action and separate the SCI-Mahanoy parties and claims from the SCI-Albion parties and claims (Doc. 20), the motion to separate the parties was granted, Mincy was directed to file proposed amended complaints separating the different claims and parties, and defendants' motion to dismiss was denied without prejudice.  (Doc. 22, at ¶¶ 1, 5.)

On September 1, 2009, Mincy filed two separate proposed amended complaints; one contained claims against SCI-Mahanoy defendants (Doc. 24) and the other asserted claims against SCI-Albion defendants (Doc. 23).  The proposed amended complaint containing the SCI-Albion claims was docketed (Doc. 26) and immediately transferred to the United States District Court for the Western District of Pennsylvania where it was opened as Mincy v. McConnell, Civ. A. No. 1:09-CV-236 (W.D. Pa. Sept. 10, 2009).  The  proposed amended complaint involving the SCI-Mahanoy claims which, in addition to defendant Klem, now included

---

[1] Mincy  apparently desired to name as defendants other officers and staff at SCI-Mahanoy and SCI-Albion, and other deputy secretaries and administrative staff at the Pennsylvania Department of Corrections Central Office,  but claimed that he was unable to do so as a result of the limitations of the form complaint. (Doc. 1.)

4

defendants Chmielewski, Temperine, Gavin, Williams, Kornasky, Derfler, Wetzel,

Kmieciak, Kerschner, Brought, Bronsburg, Meyers, Hryciyna, Vance, Murphy, and

Gower was docketed (Doc. 27), and ordered served on all defendants named therein

(Doc. 25).

Defendants moved to dismiss the complaint and, on February 16, 2010, the

motion was granted in part and denied in part and resulted in Mincy being afforded

the opportunity to file a second amended complaint containing the claims that

defendants Vance, Gower, Wetzel and Murphy issued him retaliatory misconducts,

and the claims alleging retaliatory theft of property, retaliatory destruction of

property, and retaliatory transfer.  (Doc. 36, at 13-14.)  The second amended

complaint was filed on May 24, 2010, and again named Klem, Chmielewski,

Temperine, Gavin, Williams, Kornasky, Derfler, Wetzel, Kmieciak, Kerschner,

Brought, Bronsburg, Meyers, Hryciyna, Vance, Murphy, and Gower.   (Doc. 44.)

Defendants filed a waiver of reply and included therein the affirmative defense that

Mincy's claims are barred by the applicable statute of limitations.  (Doc. 45, at 5.)

The matter proceeded through extensive discovery.  Plaintiff's motion for partial

summary judgment and defendants' cross motion for summary judgment are now

ripe for disposition.

## II.   <u>Standard of Review</u>

Through summary adjudication the court may dispose of those claims that do

not present a "genuine issue as to any material fact" and for which a jury trial

would be an empty and unnecessary formality.  <u>See</u> Fed. R. Civ. P. 56(c).  The

burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

## III.    Discussion

### A.    Statute of Limitations

Defendants argue that defendants Chmielewski, Temperine, Gavin, Williams, Kornasky, Derfler, Wetzel, Kmieciak, Kerschner, Brought, Bronsburg, Meyers, Hryciyna, Vance, Murphy, and Gower are entitled to judgment as a matter of law because the applicable statute of limitations expired before the filing of the plaintiff's amended complaint and the claims do not relate back such that they can overcome this procedural bar.  (Doc. 159, at 2.)

Federal civil rights statutes do not contain a specific statute of limitations for § 1983 actions.  Therefore, the district court utilizes the applicable state statute of limitations which governs personal injury actions.  See Wallace v. Kato, 549 U.S. 384, 387-88 (2007); Wilson v. Garcia, 471 U.S. 261, 276 (1985); Urrutia v. Harrisburg Cnty. Police Dept., 91 F.3d 451, 457 n. 9 (3d Cir. 1996).  Pennsylvania's applicable

personal injury statute of limitations is two years.  <u>See</u> 42 Pa. Cons. Stat. § 5524(7);

<u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 190 (3d Cir. 1993).

Plaintiff first argues that the statute of limitations argument is without merit

because the court ordered service of the complaint found at Doc. 1 in Mincy I,

which named all of the defendants "from the very start."  (Doc. 167, at 8.)  He is

mistaken.  The original complaint in Mincy I was never served because it was in

clear violation of the pleading rules set forth in the Federal Rules of Civil

Procedure.  (<u>See</u> Mincy I, Doc. 4.)  Rather, on January 15, 2009, in accordance with

the Court of Appeals' Mandate, the form-complaint filed on April 30, 2007 (Doc. 1),

was ordered served on defendants Klem, Beard and Brooks.  Mincy received notice

of the service order and notice of the issuance of summonses to Klem, Beard, and

Brooks.  (Doc. 10; January 15, 2009, docket entry remarks and receipts.)

Defendants Chmielewski, Temperine, Gavin, Williams, Kornasky, Derfler, Wetzel,

Kmieciak, Kerschner, Brought, Bronsburg, Meyers, Hryciyna, Vance, Murphy, and

Gower were first named in this action in Mincy's proposed amended complaint

(Doc. 24) filed on September 1, 2009, and docketed as his amended complaint (Doc.

27) on September 10, 2009, well beyond the expiration of the statute of limitations.

If a complaint is amended to include an additional defendant after the statute

of limitations has run, the amended complaint is not time-barred if it "relates back"

to a timely filed amended complaint.  <u>Singletary v. Pennsylvania Dept. of Corr.</u>, 266

F.3d 186 (3d Cir. 2001).  Under the rule, a plaintiff seeking to have a complaint

"relate back" must show that:  (1) the claim or defense set forth in the amended

complaint arose out of the conduct, transaction or occurrence set forth in the original complaint; (2) within 120 days following the filing of the complaint, the party or parties to be added received notice of the institution of the suit and would not be prejudiced in maintaining a defense; and (3) the party sought to be added knew that, but for a mistake concerning his or her identity, he or she would have been made a party to the action.  See Garvin v. City of Phila., 354 F.3d 215, 222 (3d Cir.  2003) (citing Fed.R.Civ.P. 15(c), 4(m); Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 194 (3d Cir. 2001)).  However, "an amended complaint will not relate back if the plaintiff had been aware of the newly named parties when she filed her original complaint and simply chose not to sue them at that time."  See Garvin, 354 F.3d at 221–22;  Lape v. Pennsylvania, 157 F. App'x 491, 497 (3d Cir. 2005) (applying the Garvin rule in the context of a § 1983 claim).

Defendants concede that the claims set forth in the second amended complaint arise out of the same conduct originally pled, but argue that plaintiff cannot establish that new defendants, Chmielewski, Temperine, Gavin, Williams, Kornasky, Derfler, Wetzel, Kmieciak, Kerschner, Brought, Bronsburg, Meyers, Hryciyna, Vance, Murphy, and Gower, had notice of the action or that there was a mistake of identity regarding them.  (Doc. 159, at 12-13.)

Mincy counters by arguing that defendants had implied notice, which may be demonstrated by establishing that the proposed new defendant either shared an attorney or had an "identity of interest" with the originally named defendant.  Singletary, 266 F.3d at 196.  He relies on the shared attorney theory which requires

8

a showing that there was a "communication or relationship" between the shared

attorney and the newly named defendants prior to the expiration of the 120-day

period.  Garvin, 354, F.3d at 225.  In support, he states the following:

> Again, this action was originally filed on February 22, 2007,
> under Civil Action No. #1:07-CV-0340. (See Mincy v. Klem,
> et al., 1:07-CV-0340).
>
> Plaintiff personally sent a letter and copies of the Complaint
> to the office of Chief Counsel for the Pennsylvania
> Department of Corrections. (See "Plaintiff's Counter", at ¶¶
> 83-84, and corresponding Appendix G).
>
> Soon thereafter, plaintiff received correspondence from the
> Deputy Chief Counsel for the Pennsylvania Department of
> Corrections Office of Chief Counsel, in response [(]See id.,
> at 85.)
>
> Assistant Counsel Laura J. Neal has always been counsel for
> the defendants named in this action.  (See id., at 85.)
>
> Assistant Counsel, Laura J. Neal, is employed by the Office
> of Chief Counsel for the Pennsylvania Department of
> Corrections; the same entity and office.
>
> Therefore it is clear that in 2007 defendants had "implied
> notice" of this suit by and through their shared attorney,
> which is the Office of Chief Counsel for the Pennsylvania
> Department of Corrections.

(Doc. 167, at 9.)  This argument fails.  First of all, the correspondence from the

Pennsylvania Department of Corrections, Governor's Office of General Counsel,

dated March 21, 2007, advised Mincy that his "letter will be forwarded to the

assigned attorney if and when the above action is served on the Department and an

attorney has been appointed."  (Doc. 167, at 28.)  Because the original complaint in

Mincy I was never served, and the action was subsequently dismissed for failure to

comply with an order of court, no attorney was ever appointed in that matter.  See

Mincy v. Klem (Mincy I), Civ. A. No. 1:CV-07-340 (M.D. Pa. Feb. 22, 2007).

Moreover, Attorney Laura J. Neal did not become involved in this matter until

March 10, 2009, the date on which she entered her appearance on behalf of

defendants Klem, Beard and Brooks.  (Docs. 14.)  Thus, Mincy  is unable to

establish that within 120 days following the filing of the complaint, the party or

parties to be added received notice of the institution of the suit and would not be

prejudiced in maintaining a defense.  Accordingly, Mincy's amended pleading does

not satisfy the relation back requirements.  The claims set forth in the second

amended complaint (Doc. 44) against defendants Chmielewski, Temperine, Gavin,

Williams, Kornasky, Derfler, Wetzel, Kmieciak, Kerschner, Brought, Bronsburg,

Meyers, Hryciyna, Vance, Murphy, and Gower are barred by the statute of

limitations and defendants are entitled to an entry of summary judgment.

    In the exercise of caution, particularly in light of the complex procedural

history of his case, the court will alternatively consider the merits of each of Mincy's

First Amendment retaliation claims.

### B.    Merits of First Amendment Retaliation Claims

####    1.    Statement of Material Facts

    At all times relevant, Mincy was a Pennsylvania State inmate incarcerated at

SCI-Mahanoy.  (Doc. 78, ¶ 2; Doc 108, ¶¶ 1-2; Doc. 160, ¶¶ 1-2; Doc. 166, ¶¶ 1-2.)  On

March, 18, 2005, Mincy requested approval to order new sneakers and boots from a

company by the name of "Mike's Better Shoes."  (Doc. 78, ¶ 6; Doc. 108, ¶ 7; Doc.

160, ¶ 9; Doc. 166, ¶¶ 9, 169; Doc. 167-1, at 51.)  The request was approved on

March 25, 2005, and the sneakers and boots arrived at the mail room at SCI-

Mahanoy on or about April 12, 2005.  (Doc. 78, ¶ 15; Doc. 108, ¶ 8; Doc. 160, ¶ 10; Doc.

166, ¶ 10; Doc. 167-1, at 51.)  However, because he was serving ninety days of

disciplinary custody in the RHU at that time, the package, which was retrieved

from the mail room by an officer with the initials CMM, was placed in the property

room.[2]  (Doc. 78, ¶¶ 17-18; Doc. 108, ¶¶ 6, 9-10; Doc. 160, ¶¶ 11-12.)

In April or May 2005, plaintiff expressed to defendant Kerschner, the

property room lieutenant, that he believed that his sneakers and boots were

missing.  (Doc. 78, ¶¶ 24-24; Doc. 108, ¶¶ 11-12; Doc. 160, ¶ 13; Doc. 166, ¶ 13.)

Kerschner remembers only a brief communication with Mincy about the missing

boots.  It was Kerschner's duty to investigate allegations of missing property, and

he does not recall either a grievance or request slip seeking an investigation. (Doc.

78, ¶¶ 26-27.)  Nor does he recall conducting an investigation.  (Doc. 82, at 18, ¶ 15.)

On September 7, 2005, Mincy sent an inmate request to the mail room

supervisor inquiring about his property.  (Doc. 166 ¶ 192; Doc. 167-1, at 52.)  The

following day, he was informed that he received a package from "Mike's Better

---

[2]On April 3, 2005, he received misconduct A634690 for using abusive, obscene
or inappropriate language, refusing to obey an order and presence in an
unauthorized area.  (Doc. 108, ¶ 6;Doc. 160, ¶ 8; Doc. 166, ¶ 8.)  He was found guilty
of each of the misconduct charges and sanctioned to ninety days of confinement in
disciplinary custody in the Restricted Housing Unit ("RHU").  (Id.)

Shoes" on April 12, 2005, and that it was "in property." (Doc. 166, ¶ 193; Doc. 167-1, at 52.)

Defendant Kmieciak became the property room lieutenant in October 2005. (Doc. 78, ¶ 28; Doc. 82, at 10, ¶ 6.) He recalls speaking with Mincy about the missing property but he is unable to recall the exact date or time. (Doc. 78, ¶¶ 29, 30.) He does not recall receiving any request slips requesting an investigation. (Doc. 82, at 11, ¶ 10.)

From April 2005, through January 2006, Mincy was issued a number of misconducts which resulted in consistent placement in disciplinary custody in the RHU. (Doc. 160, ¶¶ 14, 22-35; Doc. 166, ¶¶ 14, 28-29.) The sixty-day disciplinary custody sanction imposed as a result of a finding of guilt on the January 3, 2006, misconduct (A796302), resulted in accrued disciplinary custody time through July 26, 2006. (Doc. 160, ¶ 35.)

Mincy contends that three misconducts, A632622, A552229, and A632715, were issued in retaliation for filing grievances. (Doc. 44, ¶¶ 1-18, 28-36.) Misconduct A632622 was issued on May 24, 2005, by defendant Vance for threatening an employee or their family with bodily harm and using abusive or obscene language. (Doc. 160, ¶ 22.) Following a hearing on May 27, 2005, Mincy was found guilty of the misconduct. (Id. at ¶ 23.) The misconduct and the hearing examiner's decision were upheld on final review. (Id. at ¶ 24.) On May 30, 2005, he was issued misconduct A552229 by defendant Wetzel for threatening an employee or their family with bodily harm and using abusive or obscene language. (Id. at ¶ 25.) At a

12

hearing conducted on June 3, 2005, he was found guilty of this misconduct. (<u>Id.</u> at

26.)  The misconduct  and the hearing examiner's decision were upheld on appeal.

(<u>Id.</u> at ¶ 27.)  Defendant Gower issued him misconduct A632715 on November 30,

2005, for assault, threatening an employee or their family with bodily harm and

using abusive or obscene language.   (<u>Id.</u> at 32.)  He was found guilty at a December

2, 2005, hearing and sanctioned to sixty days of disciplinary custody.  (<u>Id.</u> at ¶ 33.)

The misconduct and the hearing examiner's decision were upheld on appeal.  (<u>Id.</u> at

¶ 34.)

He also contends that misconduct A632788 for possession of contraband,

which was issued by defendant Murphy on September 1, 2005, was in retaliation for

the filing of a federal civil rights lawsuit.  (Doc. 44, at ¶¶ 19-27; Doc. 160, ¶ 28; Doc.

166, ¶ 28.)  At a September 6, 2005, hearing, Mincy was found guilty and he was

sanctioned with confiscation of the contraband.  (Doc. 160, ¶ 29; Doc. 166, ¶ 29.)  The

misconduct and the hearing examiner's decision were upheld on appeal.  (Doc. 160,

¶ 30.)

On June 8, 2006, while still confined in the RHU, he sent correspondence to

Superintendent Klem and Deputy Secretary Donald Vaughn requesting protective

custody and a transfer from SCI-Mahanoy based upon fears that there were several

inmates  who wanted to harm him.[3]  (Doc. 160, ¶ 36; Doc. 166, ¶ 36.)  He was

---

[3]This was not the first time Mincy requested a transfer.  In or around August
2004, Mincy submitted requests to the Pennsylvania Department of Corrections
("DOC") Central Office and SCI-Mahanoy staff requesting a transfer from SCI-
Mahanoy pursuant to the Interstate Corrections Compact.  (Doc. 160, ¶ 3; Doc. 166,

interviewed on July 13, 2006.  (Doc. 160 ¶ 40.)  The only individual identified in the

course of that interview was an inmate named Scott.  (<u>Id.</u>)  However, based upon

the information provided by Scott during his interview of the same date, and the

lack of any other inmates identified by name, Mincy was informed that there was no

basis for his allegations and the decisions concerning his status and continued

confinement at SCI-Mahanoy would remain in place.  (<u>Id.</u> at 41.)

On or about July 26, 2006, the date he was due to be released from the RHU

back to general population, Mincy sent a request slip to defendant Gavin seeking to

be separated from six inmates.   (Doc. 160, ¶¶ 37-38; Doc. 166, ¶ 38.)  He stated that

he and Mosley, his RHU cell mate, were involved in a fight on January 3, 2006. and

that he had testified against inmate Mosley.  (<u>Id.</u>)  The inmates from whom he

requested separation were Mosley's friends, and he feared that they would retaliate

against him because of his testimony.  (<u>Id.</u> at ¶ 39.)  This additional information

prompted defendant Gavin to commence another investigation, during which

plaintiff remained in the RHU.  (Doc. 160, at ¶¶ 42-43.)

After concluding that plaintiff's safety would be jeopardized if he were

returned to the general population, defendant Gavin sent a memorandum to

defendant Klem, dated August 7, 2006, recommending that Mincy not be returned

to general population, that a separation transfer be requested to  separate him from

---

¶ 3.)  In one request, Mincy requested a transfer to SCI-Fayette. (Doc. 160, ¶ 4; Doc.
166, ¶ 4.)  He renewed his transfer request with the DOC's Central Office in January
and February 2005.  (Doc. 160, ¶ 5; Doc. 166, ¶ 5.)

the inmates he identified, and that he remain in Administrative Custody in the

RHU pending a decision on the transfer petition.  (Doc. 160, at ¶¶ 44-46; Doc. 166, at

¶¶ 45-46.)

The transfer request was sent to the DOC's Bureau of Inmate Services

("Inmate Services") on August 22, 2006.  (Doc. 160, at ¶¶ 48, 50; Doc. 166, at ¶ 50.)

Staff at SCI-Mahanoy recommended that Mincy be transferred to the Western

Region of the state due to security concerns associated with the multiple enemies

that he had in the Eastern Region.  (Doc. 160, at ¶¶ 50-51.)  However, final decisions

regarding the need for transfer, and the institution to which an inmate should be

transferred, rests with Inmate Services and transfer petitions  are not effective until

approved by the Bureau.  (Doc. 160, at ¶ 56; Doc. 166, at ¶ 56.)  In deciding where to

transfer an inmate, Inmate Services considers numerous administrative and

security concerns, including the inmate's custody level, institutional adjustment,

treatment or programming needs, available bed space at potential receiving

institutions, and any security concerns associated with the inmate.  (Doc. 160, ¶ 57;

Doc. 166, ¶ 57.)  Mincy's transfer request was approved on August 22, 2006.  (Doc.

160, at ¶ 54.)  On or about that same date, Inmate Services received a request for the

entry of administrative separations between Mincy and several other inmates.

(Doc. 160, ¶ 52.)  The separations were approved on September 1, 2006.  (Doc. 160, ¶

60; Doc. 166, ¶ 60.)  Based upon a review of all of the above, Inmate Services decided

that a transfer to SCI-Albion was appropriate for Mincy.  (Doc. 160, ¶ 58.)

15

On August 31, 2006, in preparation for his transfer to SCI-Albion, Mincy was taken to the property room to inventory and pack his property. (Doc. 78, ¶ 50; Doc 108, ¶ 14; Doc. 160, ¶ 62.)  Property room officers defendants Hryciyna and Meyers were in the property room at the time. (Doc. 166, ¶¶ 205-207.)  Mincy represents that he inquired about his missing property at that time. (Doc. 166, ¶¶ 210-213.)  Meyers has no recollection of this inquiry. (Doc. 167-1, at 70)  Mincy packed his own property, including his typewriter for shipping to the new facility. (Doc. 78, ¶¶ 58-59; Doc. 106, ¶ 15; Doc. 160, ¶ 64; Doc. 166, ¶ 64.)  All property was shipped *via* United Parcel Service of America ("UPS"). (Doc. 108, ¶ 18; Doc. 160, ¶¶ 67, 74; Doc. 166, ¶ 74.)

On September 1, 2006, while still at SCI-Mahanoy, Mincy filed grievance 163126 alleging that the boots and sneakers he ordered in March 2005, had been taken in retaliation for having filed civil complaints and inmate grievances. (Doc. 108, ¶ 16; Doc. 160, ¶ 65; Doc. 126-1, at 42.)  The civil complaints to which he refers include the February 9, 2005, filing of <u>Mincy v. Chmielewski</u>, Civil Action No. 1:05-CV-0292, wherein he alleges retaliation claims against Superintendent Klem, Deputy Superintendent Chmielewski, Lt. Derfler, and Officers Vance, Murphy, and Gower. (Doc. 78, ¶ 4; Doc. 108, ¶ 3; Doc. 160, ¶ 6; Doc. 166, ¶¶ 6, 103.)  An order directing service of this action was delayed until July 18, 2005, because the complaint was amended on three occasions. (Doc. 108, at ¶ 5; Doc. 160, ¶ 7; Doc. 108-1, at 5.)  The other relevant civil complaint was filed on July 20, 2005; <u>Mincy v. Klem</u>, Civil Action No. 1:05-CV-1458, alleging retaliation claims against numerous

Pennsylvania Department of Corrections employees employed at SCI-Mahanoy. (Doc. 78, ¶ 5; Doc. 108, ¶ 13.)

Defendant Brought investigated grievance 163126 and, based on an August 31, 2006, property inventory sheet indicating that Mincy had multiple pairs of boots and sneakers, the grievance was denied.  (Doc. 78, ¶ 33; Doc. 160, ¶ 68; Doc. 159-12; Doc. 159-13, at 1.)  However, the matter was remanded based on Mincy's representations in his appeal that the sneakers and boots on the inventory sheet were not the new items that he had ordered in March 2005.  (Doc. 160, ¶¶ 63, 69-70.) Upon further investigation, Brought determined that Mincy had ordered the items and they were received at SCI-Mahanoy.  (Id. at ¶ 71.)   However, because the items could not be located, Mincy was reimbursed in the form of a credit to his inmate account on October 20, 2006.  (Doc. 78, ¶ 62; Doc. 108, ¶ 19; Doc. 159-12, at 11; Doc. 160, ¶¶ 71-72.)

Within days of receiving defendant Brought's initial denial of grievance 163126, Mincy filed grievance 165823 alleging defendant Brought interfered with the grievance process.  (Doc. 126-1, at 45.)  Defendant Derfler was assigned to investigate the grievance and concluded that it was frivolous.  (Doc. 78, ¶ 41; Doc. 126-1, at 47.)  Defendant Klem responded to Mincy's appeal in the following manner:

> I am in receipt of your grievance appeal to this office.  In evaluating your grievance appeal, I have reviewed the initial grievance and the response you received from the Grievance Officer, Major Thomas Derfler.

Additionally, I have also reviewed the materials related to Grievance #163126 regarding the same issues.

As you should know, based upon the information that you did provide to me in your appeal of that grievance, I remanded the grievance for follow-up by the Grievance Officer and further review indicates that the money for the boots was taken off of your account. $186.97 was subsequently credited on your account for the boots and sneakers which you had previously ordered.

While you are correct that you never got the property that you ordered, the whole situation could have been avoided if you had provided staff from day one with documentation which supported your allegations. Yet, it appears that your decision to provide the proper documentation at the time of this grievance and other grievances related to the shoes and sneakers was in an attempt to misuse the Grievance System and discredit staff for your own purposes.

At this point in time, since your account has been accredited with the cost of the original items, I consider this grievance resolved.

(Doc. 126-1, at 48.)[4]

He was transferred to SCI-Albion on September 5, 2006. (Doc. 108, ¶ 17; Doc. 160, ¶ 66; Doc. 166, ¶ 66.) His property was shipped on September 8, 2006. (Doc. 78, ¶ 67.) Shortly after the transfer, he filed grievance 163654 alleging that his transfer was in retaliation for his previously filed lawsuits and grievances. (Doc. 160, ¶ 77;

---

[4]According to Mincy, "[t]he documentation attached to the appeal of grievance #165823 were approved property form 'DC 815A' 'Outside Purchase Approval Form', his approved cash slips, a request slip response from mail room supervisor Sally Gennarini indicating Plaintiff's sneakers and boots arrived at SCI Mahanoy in April 2005, and a copy of Plaintiff's inmate account statement indication that money was deducted and sent for the purchase of sneakers and boots." (Doc. 78, ¶ 45.)

Doc. 166, ¶ 77.)  He was informed that his "transfer to SCI-Albion was initiated by the staff at SCI-Mahanoy and approved by Central Office.  SCI-Mahoney had no input to the decision making process."  (Doc. 159-15.)

Mincy also filed a grievance concerning damage to his typewriter.  Although he wrapped his typewriter in a towel and bath robe when he packed it for shipping, it arrived at SCI-Albion damaged.  (Doc. 78, ¶¶ 60-61; Doc. 160, ¶ 73; Doc. 166, ¶ 73.) He was informed that UPS had been contacted for reimbursement for the cost of the typewriter, but, because UPS had not yet responded, he would be reimbursed. (Doc. 160, ¶ 75.)  He was reimbursed for the cost of his typewriter.  (Doc. 78, ¶ 62; Doc. 108, ¶ 20; Doc. 160, ¶ 76.)

> 2.    Analysis

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law committed by state officials.  See 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.  Section 1983 is not a source of substantive rights, but merely a method for vindicating violations of other federal laws.  Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kopec v. Tate, 361 F.3d 772, 775-76 (3d Cir. 2004).   In order to prevail on a civil rights claim, a plaintiff must establish that: (1) the alleged wrongful

conduct was committed by a person acting under color of state law, and (2) the

conduct deprived him of a right, privilege, or immunity secured by the Constitution

or laws of the United States.  Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000);

Schiazza v. Zoning Hearing Bd., 168 F. Supp.2d 361, 372 (M.D. Pa. 2001).

> a.    Eleventh Amendment

Under the Eleventh Amendment, states and state agencies are immune from

suit in federal court.  See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf &

Eddy, Inc., 506 U.S. 139, 144 (1993).  "Because the Commonwealth of Pennsylvania's

Department of Corrections is a part of the executive department of the

Commonwealth, see PA. STAT. ANN., tit. 71, § 61, it shares in the Commonwealth's

Eleventh Amendment immunity."  See Lavia v. Pennsylvania Dep't of Corrections,

224 F.3d 190, 195 (3d Cir. 2000).  While a state may lose its immunity by

Congressional abrogation or by waiver, see id., Congress did not abrogate states'

sovereign immunity when it enacted 42 U.S.C. § 1983.  See Will v. Michigan Dep't of

State Police, 491 U.S. 58, 66 (1989).  Moreover, the Pennsylvania legislature has

expressly declined to waive its sovereign immunity by statute.  See Lavia, 224 F.3d

at 195; see also 42 PA. CONS. STAT. ANN. § 8521(b).  The Eleventh Amendment

prohibits a lawsuit against defendants sued in their official capacities because the

state is the real party in interest inasmuch as the plaintiff seeks recovery from the

state treasury.  Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990).

Defendants seek to dismiss the claims against them in their official capacity

as barred by the Eleventh Amendment.  Mincy argues that this argument does not

require court review because "the Second Amended Complaint (Doc. 44) clearly

shows that defendants were sued in their individual capacities <u>only</u>." (Doc. 167, at 7

(emphasis in original).)  The court agrees.  At the conclusion of each claim set forth

in the Second Amended Complaint, Mincy states that he is seeking relief against

each defendant in their individual capacity; there are no allegations of official

capacity.  (Doc. 44, at 2, 7, 10, 11, 13-14.)

        b.    Retaliation

Mincy alleges that he was retaliated against for exercising his First

Amendment rights.  The First Amendment offers protection for a wide variety of

expressive activities.  <u>See</u> U.S. Const. amend I.  These rights are lessened, but not

extinguished in the prison context, where legitimate penological interests must be

considered in assessing the constitutionality of official conduct.  <u>See</u> <u>Turner v.</u>

<u>Safley</u>, 482 U.S. 78, 89 (1987).  Retaliation for expressive activities can infringe upon

an individual's rights under the First Amendment.  <u>See</u> <u>Allah v. Seiverling</u>, 229 F.3d

220, 224-25 (3d Cir. 2000).  To prevail on a retaliation claim under 42 U.S.C. § 1983,

plaintiff must demonstrate (1) that he was engaged in protected activity; (2) that he

suffered an "adverse action" by government officials; and (3) that there is "a causal

link between the exercise of his constitutional rights and the adverse action taken

against him."  <u>Rauser v. Horn</u>, 241 F.3d 330 (3d Cir. 2001) (quoting <u>Allah</u>, 229 F.3d at

225).  The last <u>Rauser</u> prong requires a prisoner to establish a causal link between

the exercise of his constitutional rights and the adverse action taken against him.

The court employs a burden-shifting regime to determine whether a causal link

21

exists.  The prisoner bears the initial burden of proving that his constitutionally

protected conduct was a substantial or motivating factor in the decision to

discipline him or retaliate against him.  See id. (citing Mount Healthy City Sch. Dist.

Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  The burden then shifts to the

defendants to prove by a preponderance of the evidence that they would have taken

the same disciplinary action even in the absence of the protected activity.  See id.  If

defendants prove that they would have made the same decision absent the

protected conduct for reasons reasonably related to a legitimate penological

interest, they will prevail in the retaliation action.  See id. at 334.

### i.   Issuance of Misconducts

The allegedly retaliatory conduct of defendants Vance, Wetzel, Murphy and

Gower, set forth in "Count I" of the Second Amended Complaint, consists of issuing

misconducts for which Mincy was found guilty.  The United States Court of Appeals

for the Third Circuit has held that when there is a finding of guilt, a prisoner cannot

prevail on a claim that the person issuing the misconduct issued a false misconduct

if the disciplinary sanction imposed is supported by some evidence.  Carter v.

McGrady, 292 F.3d 152, 159 (3d Cir. 2002).  In Carter, an inmate alleged that his

disciplinary sanction was imposed in retaliation for his work as a jailhouse lawyer,

but the appellate court concluded that, even assuming that an inmate had a

constitutionally protected interest to assist other prisoners with legal matters, and

that prison officials' disciplinary action against Carter was "motivated by hostility

to this protected activity," Carter could not prevail in a retaliation claim because he

22

was guilty of the charge underlying the disciplinary sanction.  This rationale has been consistently applied in this circuit.  Romansky v. Stickman, 147 F. App'x. 310, 312 (3d Cir. 2005) (citing Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (stating that a finding that a prisoner violated the rules checkmates his retaliation claim)); Alexander v. Fritch, 396 F. App'x. 867, 873–74 (3d Cir. 2010); Fortune v. Hamberger, 379 F. App'x. 116, 121 (3d Cir. 2010).

Because Mincy was found guilty of the misconducts issued by defendants Vance, Wetzel, Murphy and Gower, and the misconducts were upheld through administrative review,  he cannot bring a viable claim based on retaliatory misconducts.  Defendants Vance, Wetzel, Murphy and Gower are entitled to an entry of judgment on Mincy's Count I.

i.    Theft/Destruction of Property[5]

In Count II, Mincy alleges that defendants Wetzel, Kerschner, Kmieciak, Brought, Bronsburg, Meyers, Hryciyna, and Derfler engaged in "intentional and retaliatory theft and destruction of his property" in retaliation for the exercise of his First Amendment rights.  (Doc. 44, at 7.)  "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  Personal involvement may be

_____

[5]Mincy also suggests that "these defendants conspired in the acts alleged or attempted to cover them up to prevent others from being held accountable" (Doc. 167, at 11).  However, the civil rights conspiracy claim, which was included in the amended complaint (Doc. 27) filed on September 10, 2009, was dismissed by order dated February 16, 2010 (Doc. 36, at 13, ¶ 2).  The matter is now proceeding *via* the second amended complaint (Doc. 44) which was filed on May 24, 2010 and alleges only retaliation claims.  Hence, the conspiracy claim will not be revisited.

shown through allegations of personal direction or actual knowledge and

acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also,

Rizzo v. Goode, 423 U.S. 362 (1976); see Atkinson v. Taylor, 316 F.3d 257 (3d Cir.

2003); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  Such

allegations, however, must be made with appropriate particularity.  Rode, 845 F.2d

at 1207-08.  Further, the United States Court of Appeals for the Third Circuit

requires a defendant's contemporaneous, personal knowledge and acquiescence, in

order to establish personal knowledge.  Id.

   Mincy's litigation activities clearly qualify as protected conduct.  Although

he  presents a sufficient showing of adverse action, Mincy has failed to establish

that the adverse action was the result of defendants' conduct or, for that matter, at

the hands of any government officials.  The record is devoid of evidence

establishing the identity of the individual who committed the alleged theft of

Mincy's footwear, and there is no allegation or record evidence establishing that

any defendant  had contemporaneous, personal knowledge of the alleged theft.

   In April or May 2005, plaintiff expressed to defendant Kerschner, the

property room lieutenant, that he believed that his sneakers and boots were

missing.  Kerschner recalls that Mincy spoke to him about the missing property, but

does not remember the date or time, does not recall receiving a request to conduct

an investigation, and did not conduct an investigation.  Defendant Kmieciak, who

did not become the property room lieutenant until October 2005, recalls speaking

with Mincy about the missing property, but cannot recall the exact date or time,

and does not recall receiving a request to investigate the missing property.   The

involvement of property room officers Meyers and Hryciyna is limited to their

presence during an inventory of plaintiff's property on August 31, 2006, more than

sixteen months after the boots and sneakers were allegedly stolen.   While it appears

from the record that, at some point, each of these defendants were made aware that

Mincy was missing his boots and sneakers, there is simply no evidence that any of

them were personally involved in the disappearance of the property.

        The involvement of defendants Brought and Derfler only relates to the

review of Mincy's grievances.   Brought investigated grievance 163126 addressing

the missing property and Derfler handled grievance 165823 concerning the manner

in which grievance 163126 was handled by defendant Brought.   Participation in the

after-the-fact review of a grievance or appeal is not enough to establish personal

involvement.   See Rode, 845 F.2d at 1208 (finding the filing of a grievance is not

enough to show the actual knowledge necessary for personal involvement); Brooks

v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's

allegation that prison officials and administrators responded inappropriately, or

failed to respond to a prison grievance, did not establish that the officials and

administrators were involved in the underlying allegedly unconstitutional conduct);

Croom v. Wagner, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that

neither the filing of a grievance nor an appeal of a grievance is sufficient to impose

knowledge of any wrongdoing); Ramos v. Pennsylvania Dept. of Corr., 2006 WL

2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the

25

grievances and subsequent administrative appeal does not establish personal involvement); <u>Pressley v. Blaine</u>, No. 01-2468, 2006 U.S. Dist. LEXIS 30151, at *17 (W.D. Pa. May 17, 2006) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern." (citing <u>Garfield v. Davis</u>, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983))).   Because the involvement of defendants Brought and Derfler is limited to the after-the-fact review of Mincy's grievances, these defendants are entitled to summary judgment.

Although Count II contains allegations against defendants Bronsburg and Wetzel (Doc. 44, ¶¶ 46, 51, 53), there is no mention of either defendant in the pertinent sections of Mincy's statements of material facts in support of his motion for summary judgment or in opposition to defendants' motion.  (Docs. 78, 166.) Unsupported allegations are insufficient to establish personal involvement.  A party opposing summary judgment must come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  <u>Pappas</u>, 331 F. Supp. 2d at 315; FED. R. CIV. P. 56(e).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see also</u> FED. R. CIV. P. 56(c), (e).  Mincy fails to meet his burden with respect to Bronsburg and Wetzel.

Based on the foregoing, plaintiff's motion for summary judgment on Count II will be denied and defendants' motion for summary judgment on Count II will be granted.

In "Count III," Mincy seeks liability against defendants Kmieciak, Meyers, and Hryciyna "for retaliatory destruction of Plaintiff's property, which [was] done to punish Plaintiff for exercise of his rights cited herein, and to frustrate Plaintiff's litigation activities." (Doc. 44, at 10.)  Defendants are also entitled to an entry of summary judgment on this count as the claim is conclusory in nature and unsupported by the evidence in the record.

As with Count II, there is no evidence that any of these defendants, or any governmental officials, were personally involved in the damage to Mincy's typewriter.  Plaintiff would have this court conclude that, after he filed grievance 163126 concerning his missing boots and sneakers, and after he was transferred to SCI-Albion on September 5, 2006, defendants Kmieciak, Meyers, and Hryciyna unpacked Mincy's typewriter, destroyed it, re-packed it, and shipped it *via* UPS to SCI-Albion.  Although these defendants were present on the day Mincy inventoried and packed his property, including his typewriter, there is nothing to indicate that they had any responsibility for the destruction of the typewriter, which clearly occurred in transit.  In fact, there is not a scintilla of evidence in the record to support these allegations and no reasonable inference can be drawn from defendants' presence on the day the typewriter was packed, by Mincy, for shipping to SCI-Albion.  Defendants are therefore entitled to an entry of summary judgment on Count III and plaintiff's motion for summary judgment on Count III will be denied.

27

iii.     *Transfer to SCI-Albion*

In "Count IV" Mincy contends that defendants Kornasky, Williams, Gavin, Derfler, Chmielewski, Temperine and Klem, used a "legitimate transfer as a means to retaliate against Plaintiff [for filing federal lawsuits and pursing grievances] by intentionally recommending, and having Plaintiff sent to the furthest prison in the Pennsylvania Department of Corrections Western Region, in order to create an intentional hardship."  (Doc. 44, at 11.)  Such activity is constitutionally protected conduct, and transfer to another facility is sufficiently adverse.[6]  However, because Mincy fails to meet the causation prong of the retaliation test, his claim fails.  He has produced absolutely no evidence that his litigation and grievance activities at SCI-Mahanoy were the substantial or motivating factors for his transfer to SCI-Albion.

On or about July 26, 2006, Mincy sent a request slip to defendant Gavin seeking to be separated from six inmates.  He stated that he and Mosley, his RHU cell mate, were involved in a fight on January 3, 2006. that he testified against inmate Mosley, and that the inmates from whom he requested separation were Mosley's friends and he feared that they would retaliate against him because of his testimony.  After conducting an investigation, defendant Gavin concluded that

---

[6]It is questionable whether the transfer in this case can be considered adverse action.  Defendants have demonstrated that on more than one occasion Mincy requested to be transferred and, most recently, sought separation from a number of inmates for security reasons.  He does not dispute or even address defendants' facts or documentation in support of this position; he simply takes issue with the location of the facility to which he was transferred.

plaintiff's safety would be jeopardized if he were returned to the general population. On August 7, 2006, defendant Gavin sent a memorandum to defendant Klem dated August 7, 2006, recommending that Mincy not be returned to general population, that a separation transfer be requested to separate him from the inmates he identified, and that he remain in Administrative Custody in the RHU pending a decision on the transfer petition.  The transfer petition was sent to Inmate Services on August 22, 2006.  It included a recommendation from the staff at SCI-Mahanoy that Mincy be transferred to the Western Region of the state due to security concerns associated with the multiple enemies that he had in the Eastern Region. Inmate Services chose SCI-Albion as the most suitable transfer facility and Mincy was transferred on September 5, 2006.

The uncontroverted evidence demonstrates that Mincy was transferred for the purpose of maintaining his personal security.  He has failed to meet his burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to transfer him.  Because no disputed issue of fact exists with regard to the establishment of causal connection, summary judgment will be granted in favor of defendants on Count IV.

c.    Constitutional Tort

In Count V Mincy alleges that all of the facts alleged in the preceding counts, taken together, violate his constitutional rights.  (Doc. 44, at ¶¶ 89-92.)  Given that it has been concluded that plaintiff's rights were not violated in Counts I through IV,

plaintiff's motion for summary judgment on Count V will be denied and defendants

motion for summary judgment will be granted.

**IV.    <u>Conclusion</u>**

Based on the foregoing, plaintiff's motion for partial summary judgment

(Doc. 80) will be denied.  Defendants' motion for summary judgment (Doc. 150) will

be granted and judgment will be entered in favor of defendants and against

 plaintiff.  Plaintiff's  motion for sanctions (Doc. 196), motion to amend his

complaint (Doc. 198), and motion to stay ruling on defendants' motion for summary

judgment (Doc. 200) will be denied.


                                          S/ Christopher C. Conner
                                         CHRISTOPHER C. CONNER
                                         United States District Judge


Dated:        March 6, 2012

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HILTON KARRIEM MINCY,** | : | **CIVIL ACTION NO. 1:07-CV-0790** |
| | : | |
| **Plaintiff,** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **EDWARD KLEM**, et al., | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 6th day of March, 2012, in accordance with the foregoing memorandum, it is hereby ORDERED that:

1. Plaintiff's motion for partial summary judgment (Doc. 80) is DENIED.

2. Defendants' motion for summary judgment (Doc. 150) is GRANTED.

3. The Clerk of Court is directed to ENTER judgment in favor of defendants and against plaintiff.

4. Plaintiff's motion for sanctions (Doc. 196), motion to amend his complaint (Doc. 198), and motion to stay ruling on the motion for summary judgment (Doc. 200) are DENIED.

5. The Clerk of Court is directed to CLOSE this case.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge